# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————

AMERICAN MARRIAGE MINISTRIES,

*Plaintiff-Appellant*,

v.

CHERYL COLLINS, et al.,

*Defendants-Appellees*.

———————

On Appeal from the United States District Court
for the Eastern District of Tennessee
(No. 3:24-cv-00247)

---

## APPELLEES' RESPONSE BRIEF

---

Jonathan Skrmetti
  *Attorney General & Reporter*
  *of the State of Tennessee*

J. Matthew Rice
  *Solicitor General*

Virginia N. Adamson
  *Assistant Solicitor General*
  *Counsel of Record*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee
(615) 741-3491
jenna.adamson@ag.tn.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

STATEMENT OF THE ISSUES .......................................................................... 2

INTRODUCTION ............................................................................................... 3

STATEMENT OF THE CASE ............................................................................ 5

    A.  Tennessee's history of regulating who may solemnize marriage. ............. 5

    B.  The previous challenge to Tennessee's online ordination prohibition. ..... 6

    C.  Factual and procedural background of this case. ...................................... 9

SUMMARY OF THE ARGUMENT ................................................................. 19

STANDARD OF REVIEW ............................................................................... 22

ARGUMENT ..................................................................................................... 22

I.     Tennessee's Sovereign Immunity Forecloses Any Viable Relief. ............... 22

II.    AMM Lacks Standing to Assert Its Remaining Claims. ............................. 27

    A.  AMM failed to establish standing to pursue prospective relief. ............. 28

    B.  AMM's summary-judgment evidence failed to establish standing .......... 36

III.   AMM's Remaining Claims Fail on the Merits. ........................................... 40

    A.  The district court correctly granted Defendants judgment as a matter of law on AMM's as-applied Establishment Clause claim. ............................... 41

        1.  The Establishment Clause bars official religious preferences on denominational grounds. ...................................................................... 41

        2.  AMM's arguments fail. ...................................................................... 46

    B.  The district court correctly granted Defendants judgment as a matter of law on AMM's equal protection claim. ............................................................ 49

        1.  AMM did not establish disparate treatment as compared to ULC. ... 50

        2.  The district court correctly applied rational basis review ................. 52

        3.  AMM forfeited any challenge to the district court's rational basis holding. .................................................................................................. 54

CONCLUSION .................................................................................................. 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine,*
527 U.S. 706 (1999)................................................................................23

*Arsan v. Keller,*
784 F. App'x 900 (6th Cir. 2019)................................................................50, 51

*Bashaw v. State,*
9 Tenn. 177 (1829)................................................................................5

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,*
512 U.S. 687 (1994)................................................................................48

*Bench Billboard Co. v. City of Cincinnati,*
675 F.3d 974 (6th Cir. 2012)................................................................51, 52

*Bowman v. United States,*
564 F.3d 765 (6th Cir. 2008)................................................................53

*Cath. Charities Bureau, Inc. v. Wis. Labor & Indus. Rev. Comm'n,*
605 U.S. 238 (2025)................................................................*passim*

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985)................................................................52

*Colo. Christian Univ. v. Weaver,*
534 F.3d 1245 (10th Cir. 2008)................................................................41, 42, 43, 48

*Cooperrider v. Woods,*
127 F.4th 1019 (6th Cir. 2025)................................................................24

*Cramer v. Virginia,*
202 S.E.2d 911 (Va. 1974)................................................................5

*CSX Transp., Inc. v. Ala. Dep't of Revenue,*
562 U.S. 277 (2011)................................................................45, 46

*Doe v. Lee,*
102 F.4th 330 (6th Cir. 2024)................................................................26

*Doe v. Lee*,
  137 F.4th 569 (6th Cir. 2025) ...................................................................23, 24

*Dog Pound, LLC v. City of Monroe*,
  558 F. App'x 589 (6th Cir. 2014) ...................................................................50

*Elk Grove Unified Sch. Dist. v. Newdow*,
  542 U.S. 1 (2004)...........................................................................................45

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024).........................................................................27, 29, 32

*Firewalker-Fields v. Lee*,
  58 F.4th 104 (4th Cir 2023) .....................................................................42, 44

*Foothills Christian Ministries v. Johnson*,
  148 F.4th 1040 (9th Cir. 2025) .......................................................................44

*Glennborough Homeowners Ass'n v. U.S. Postal Serv.*,
  21 F.4th 410 (6th Cir. 2021) ...................................................................*passim*

*Glicker v. Mich. Liquor Control Comm'n*,
  160 F.2d 96 (6th Cir. 1947) ............................................................................50

*Gore v. Lee*,
  107 F.4th 548 (6th Cir. 2024) .........................................................................53

*Green v. Mansour*,
  474 U.S. 64 (1985)..........................................................................................26

*Haaland v. Brackeen*,
  599 U.S. 255 (2023).........................................................................................35

*Hagood v. Southern*,
  117 U.S. 52 (1886)...........................................................................................26

*Hawaii v. Gordon*,
  373 U.S. 57 (1963)....................................................................................23, 25

*Healthcare is Legal Duty, Inc. v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) ..........................................................................22

*Kallstrom v. City of Columbus*,
   136 F.3d 1055 (6th Cir. 1998) ...................................................................24

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022)...........................................................................41, 48

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949)...................................................................................26

*Larson v. Valente*,
   456 U.S. 228 (1982).....................................................................................45

*Marie v. Am. Red Cross*,
   771 F.3d 344 (6th Cir. 2014) ...............................................................51, 52

*Maryland v. U.S. Dep't of Agric.*,
   151 F.4th 197 (4th Cir. 2025) ...............................................................32, 33

*People of Ill. ex rel. McCollum v. Bd. of Educ. of Sch. Dist. No. 71*,
   333 U.S. 203 (1948)...................................................................................45

*McGowan v. Maryland*,
   366 U.S. 420 (1961).....................................................................................45

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Syst.*,
   922 F.3d 713 (6th Cir. 2019) ...................................................................22

*Murthy v. Missouri*,
   603 U.S. 43 (2024).............................................................................*passim*

*Nken v. Holder*,
   556 U.S. 418 (2009).......................................................................................1

*of C.H. v. Sch. Dist. of Chathams*,
   136 F.4th 484 (3d Cir. 2025) ...................................................................43

*Ondo v. City of Cleveland*,
   795 F.3d 597 (6th Cir. 2015) ...............................................................52, 53

*Pennoyer v. McConnaughy*,
   140 U.S. 1 (1891)...................................................................................23, 25

*Reform Am. v. City of Detroit*,
   37 F.4th 1138 (6th Cir. 2022) ...........................................................21, 50

*Satanic Temple, Inc. v. Rokita*,
   163 F.4th 1061 (7th Cir. 2026) ..................................................................34

*Scarbrough v. Morgan Cnty. Bd. of Educ.*,
   470 F.3d 250 (6th Cir. 2006) .....................................................................52

*Schlussel v. City of Dearborn Heights*,
   753 F. App'x 359 (6th Cir. 2018) ...............................................................53

*Scott v. Schedler*,
   826 F.3d 207 (5th Cir. 2016) .....................................................................24

*Shearson v. Holder*,
   725 F.3d 588 (6th Cir. 2013) .....................................................................22

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).....................................................................................36

*Stovall v. Jefferson Cnty. Bd. of Educ.*,
   164 F.4th 554 (6th Cir. 2026) ....................................................................23

*Tenn. Conf. of NAACP v. Lee*,
   139 F.4th 556 (6th Cir. 2025) ...............................................................passim

*TransAmerica Assur. Corp. v. Settlement Cap. Corp.*,
   489 F.3d 256 (6th Cir. 2007) ..........................................................22, 25, 26

*Union Home Mortg. Corp. v. Cromer*,
   31 F.4th 356 (6th Cir. 2022) ................................................................23, 24

*United States v. Skrmetti*,
   605 U.S. 495 (2025).....................................................................................53

*Universal Life Church Monastery Storehouse v. Nabors*,
   35 F.4th 1021 (6th Cir. 2022) ...............................................................passim

*Universal Life Church Monastery Storehouse v. Nabors*,
   No. 2:19-cv-00049, 2023 WL 5624706 (M.D. Tenn. Aug. 29,
   2023) .........................................................................................................passim

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*,
  323 F.3d 396 (6th Cir. 2003) .................................................................27, 52

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982).................................................................................23

*Western Watersheds Project v. Interior Bd. of Land Appeals*,
  62 F.4th 1293 (10th Cir. 2023) ...........................................................26, 35

*Whitney v. State Tax Comm'n*,
  309 U.S. 530 (1940).................................................................................50

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021)..............................................................................19, 22

**Statutes**

Tenn. Code Ann. § 36-3-301 ...........................................................*passim*

Tenn. Code Ann. § 36-3-301(a)(1) ...........................................................5

Tenn. Code Ann. § 36-3-301(a)(2) ....................................................*passim*

Tenn. Code Ann. § 36-3-304 ....................................................................8

Tenn. Code Ann. § 39-16-504 ..............................................................8, 32

Tenn. Code Ann. § 39-16-504(a)(1) ..........................................................7

**Other Authorities**

Philip Hamburger, *Separation of Church and State* 9-10 (2002)...........................44

Fed. R. Civ. P. 65(d)(1)..........................................................................24

U.S. Const. amend. I ..............................................................................45

U.S. Const. amend. XIV, § 1 ...................................................................50

# STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees respectfully request oral argument. AMM seeks the "extraordinary remedy" of an injunction against Tennessee officials, *see Nken v. Holder*, 556 U.S. 418, 428 (2009) (quotation omitted), and this case presents important questions about sovereign immunity, standing, and the Establishment Clause. Oral argument will aid the Court's consideration of those questions.

## STATEMENT OF THE ISSUES

The defendant district attorneys settled a prior lawsuit with Universal Life Church Monastery by stipulating that they lacked authority to enforce Tenn. Code Ann. § 36-3-301(a)(2) and a related provision. Plaintiff American Marriage Ministries (AMM) later sought similar—but significantly broader—stipulations. When Defendants refused, AMM brought suit claiming that Defendants had discriminated on religious grounds by declining to enter into the requested stipulations. The questions presented are:

1.      Whether the district court erred by holding that sovereign immunity does not bar AMM's claim.

2.      Whether the district court erred by holding that AMM had standing to pursue prospective relief claims under the Establishment Clause and the Equal Protection Clause.

3.      Whether the district court correctly granted Defendants judgment as a matter of law on AMM's Establishment Clause claim.

4.      Whether the district court correctly granted Defendants judgment as a matter of law on AMM's Equal Protection claim.

# INTRODUCTION

Before the Court are the remnants of a lawsuit that the district court has already largely—and properly—dismissed. Now, after the district court granted summary judgment on American Marriage Ministries (AMM)'s remaining Establishment Clause and Equal Protection claims against Tennessee District Attorneys General Jennings Jones and Coty Wamp, AMM comes to this Court in a last-ditch effort to resurrect its case. But the reality is that none of these claims ever should have made it past the pleadings. And they fare even worse on the merits.

Start with the fact that Defendants' sovereign immunity bars any possible relief the district court might have fashioned. Despite holding that AMM failed to allege a threat of future enforcement—the ordinary showing to come within *Ex parte Young*—the district court allowed AMM's claims to proceed based on unpled relief. The district court held (correctly) that the *Ex parte Young* exception only allows federal courts to enjoin state officials from taking actions that violate federal law. But instead of applying that well-established rule, the district court theorized that it could grant an injunction against unspecified "disparate treatment." That vague, effectively affirmative injunction defies well-established standards for deploying the awesome injunctive power. So, sovereign immunity alone compels affirmance.

Standing problems abound, too. AMM's quest for pre-enforcement standing against officers who affirmatively disclaim enforcement authority doesn't pass the

smell test. And its claimed reputational and economic injuries are the result not of Defendants' conduct, but of misunderstandings created largely by AMM itself. AMM's choice to represent to its online-ordination clients that they may legally perform marriages in Tennessee, despite Tennessee's statutory prohibition on solemnizing marriage as an online-ordained minister, cannot be remedied by an injunction against Defendants. AMM may wish it could, but this Court cannot waive a magic wand and erase § 36-3-301(a)(2) from the statute books or otherwise absolve marriages performed by AMM ministers of illegality. Nor can it whisk away Article III's minima when AMM failed to prove its harm theories during discovery.

And it only gets worse for AMM if the Court reaches the merits. This isn't a case of the State preferring one religion over another in violation of the Establishment Clause—even AMM admits that "the difference between AMM and ULCM is not based on faith or circumstances" but on who sued when. Am. Compl., R. 19 ¶ 63 Page ID # 95. That concession alone forecloses its Establishment Clause claim. Differences in litigation strategy don't equate to religious discrimination. Nor do they create an Equal Protection Clause problem. AMM and ULC sought different stipulations and thus were not similarly situated, barring AMM's claim. And, besides, AMM established no basis for heightened review but has forfeited any challenge to the district court's correct holding that Defendants' conduct was rational.

This Court should affirm.

**STATEMENT OF THE CASE**

**A.      Tennessee's history of regulating who may solemnize marriage.**

"Tennessee's tradition of regulating who may solemnize marriages is evidently nearing its two-hundred-fiftieth anniversary." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1026 (6th Cir. 2022) (*ULC*). A 1778 act "authorize[d] … all regular ministers of the gospel of every denomination, having the care of souls, and all justices of the peace, to solemnize the rites of matrimony." *Bashaw v. State*, 9 Tenn. 177, 182-83 (1829). Since that early date, Tennessee has required that a marriage be "solemniz[ed] … by a person duly qualified." *Id.* at 186. That reflects the well-recognized state interests in "marriage as an institution" and in ensuring that "the marriage contract … be memorialized in writing and by a person of responsibility and integrity and … possessed of some educational qualifications." *Cramer v. Virginia*, 202 S.E.2d 911, 914 (Va. 1974).

Although the list of persons who qualify under Tennessee law has expanded since 1778, Tenn. Code Ann. § 36-3-301(a)(1), Tennessee continues to impose requirements on prospective ministers, as well as the engaged couple and others, to "fix and regulate the contract of marriage," *Bashaw*, 9 Tenn. at 183. Most relevant here, "ministers, preachers, pastors, priests, rabbis, and other spiritual leaders" must be "ord[ained] or otherwise designa[ted] … by a considered, deliberate, and

responsible act." Tenn. Code Ann. §§ 36-3-301(a)(1), (a)(2). And "[p]ersons receiving online ordinations may not solemnize the rite of matrimony." *Id.* § 36-3-301(a)(2).

That prohibition on online-ordained ministers' solemnizing marriages in Tennessee is relatively new. Before its adoption, the legality of marriages solemnized by an online-ordained minister in Tennessee was murky, leading to confusion about whether online-ordained ministers could lawfully perform marriages in Tennessee. *See* Joint App., R. 49-1, Page ID # 684-85. In 2019, the General Assembly adopted § 36-3-301(a)(2)'s prohibition to "fix[] [that] very critical legal problem" by "clarify[ing]" that marriages solemnized by online-ordained ministers "would no longer be valid." *Id.* at Page ID # 684-86 (statement of Rep. Curcio).

## B. The previous challenge to Tennessee's online ordination prohibition.

Shortly after that statutory clarification, Universal Life Church Monastery (ULC) and a handful of ULC ministers sued Governor Bill Lee, Attorney General Herbert Slatery, and several district attorneys general and county clerks for pre-enforcement relief from the online ordination prohibition. *ULC*, 35 F.4th at 1028. ULC is a non-profit corporation that believes "anyone 'who feel[s] so called can become [a] minister[] through the Church,'" and it will "ordain as a minister—for free and over the Internet—anyone who completes a simple, online form." *Id.* at 1026 (citation omitted). This Court held that the ULC plaintiffs lacked standing to sue

Governor Lee, General Slatery, District Attorney General Kim Helper, and most of the county clerks. *Id.* at 1042. But the Court held that the ULC plaintiffs did have standing to sue one county clerk and three district attorneys, including District Attorney Jennings Jones and then-district attorney of Putnam County, Neal Pinkston. *Id.*

This Court's holding that the ULC plaintiffs established pre-enforcement standing to sue the district attorneys rested on its view that "a fear of prosecution" for violating the online ordination prohibition "[was] plausible" under Tennessee's false-statements statute. *See id.* at 1034-36. The Court accepted ULC's theory that, because "[m]inisters completing a marriage license must attest that they have 'solemnize[d] the rite of matrimony between the' now-married couple," doing so as an online-ordained minister could subject a ULC minister to criminal liability. *Id.* at 2028 (quoting Tenn. Code Ann. § 36-3-304). "[C]laiming to have solemnized a marriage" on a marriage license "despite knowingly lacking the requisite authority," ULC suggested, could "be construed as making a false entry in a government record," in violation of Tenn. Code Ann. § 39-16-504(a)(1). *Id.* And ULC pointed out that the General Assembly had increased the penalty for such an entry from a misdemeanor up to a "Class E" felony and made that increase effective the same date as the online ordination prohibition. *Id.* This Court reasoned that the "contemporaneity of those enactments reinforce[d] the inference" that the General Assembly

"intend[ed] to target plaintiffs." *Id.* at 1035. And it noted that "defendants ha[d] never provided clear assurances that they [would] *not* prosecute ULC ministers." *Id.*

Back on remand, the remaining defendants "agreed to dismiss th[e] lawsuit" based on certain stipulations. *Universal Life Church Monastery Storehouse v. Nabors*, No. 2:19-cv-00049, 2023 WL 5624706, at *1 (M.D. Tenn. Aug. 29, 2023) (*Nabors*). Defendants maintained that "there [was] no credible threat of prosecution" under the online ordination prohibition or the false statements statute. *Id.* Rather, they stipulated that it "ha[d] always been their position their position that" (a) "there [was] no criminal prosecution mechanism in Tenn. Code Ann. § 36-3-301 and thus Plaintiffs c[ould ]not be prosecuted under that statute," (b) "simply making the attestation required by Tenn. Code Ann. § 36-3-304" is not "making a false statement and thus there is no prosecutable offense under Tenn. Code Ann. § 39-16-504," and (c) defendants "are not involved with the issue of whether any marriage is valid and Defendants will not challenge the validity of marriages officiated or solemnized by ULCM ministers." *Id.* In short, defendants stipulated not to prosecute ULC ministers both to dismiss the lawsuit and because they lacked authority to do so regardless.

Despite the fact that only the district attorneys for Rutherford County, Hamilton County, and Putnam County entered these stipulations, *id.*, ULC has since represented on its website that these stipulations provide "assurances that its ministers'

rights to perform wedding ceremonies in Tennessee will be respected moving forward," Joint App., R. 49-1, Page ID # 374.

## C. Factual and procedural background of this case.

After the ULC stipulations, AMM sought clarification from some of the defendants in the ULC suit that the stipulations would apply equally to AMM. Joint App., R. 49-1, Page ID # 396-98, 402-04. Like ULC, AMM believes that "[a]ll people have the right to solemnize marriage," Am. Compl., R. 19 ¶ 8, Page ID # 88, and it allows anyone age 18 or older to be ordained as an AMM minister after completing an online form, Joint App., R. 49-1, Page ID # 575-76, 578-79. Despite acknowledging that Tennessee bars solemnizing marriages as an online-ordained minister, *see, e.g.*, *id.* at Page ID # 403, AMM states on its website that AMM ministers are "legally empowered under the protections of the Tennessee Code § 36-3-301 to officiate wedding ceremonies," *id.* at Page ID # 582; *see id.* at Page ID # 581.

AMM proposed stipulations that contained terms nearly identical to the ULC stipulations, along with the following additional terms, which were reflected in an accompanying proposed "Memorandum of Agreement":

> c. that the State of Tennessee and its respective counties will not challenge the validity of marriages officiated or solemnized by other online ordained ministers, including AMM ministers, regardless of whether the AMM minister was ordained in person or online; and

> d. that Tennessee county clerks, and their employees and agents, will be trained and directed not to deny, discourage, or chill AMM's religious practice, and that clerks and their employees and agents will

9

be trained and directed not to communicate to members of the public that AMM ministers cannot lawfully solemnize marriages, whether or not their ordination occurred online.

*Id.* at Page ID # 397. The proposed memorandum of agreement additionally

provided:

> 1. The State Actors, in their official capacity, recognize that a governmental policy or practice that denies, discourages, or otherwise chills the religious practice of AMM and its ministers could be the subject of a constitutional challenge under United States Constitution and the Tennessee Constitution.
>
> 2. Tenn. Code Ann. § 36-3-301(a)(2), as written, prohibits ministers who were ordained online from solemnizing marriages. The State Actors wish to avoid a lawsuit challenging the constitutionality of that provision, both facially and as applied to AMM and AMM's ministers.
>
> 3. Until the Tennessee General Assembly changes the provision of Tenn. Code Ann. § 36-3-301(a)(2) that bars "[p]ersons receiving online ordination" from solemnizing the rite of matrimony, the State Actors shall ensure that their employees and agents are trained and directed to not deny, discourage, or chill AMM's religious practice. The State Actors will not communicate to members of the public that an AMM minister cannot lawfully solemnize a marriage solely on the basis of the minister's affiliation and/or ordination with AMM.
>
> …
>
> 8. The State Actors further agree and represent that to the extent any of AMM's ministers are denied the right to solemnize marriage in Tennessee, the State Actors will contact any clerk refusing the rights of AMM's ministers to rectify the situation within seven (7) days of AMM notifying the State.

*Id.* at Page ID # 399.

When Generals Jones and Wamp, the district attorneys for Rutherford and

Cannon and for Hamilton County respectively, *id.* at Page ID # 395, 401, did not

10

respond to AMM's request, AMM sued them and the Morgan County district attorney and county clerk, all in their official capacities, Am. Compl., R. 19 ¶¶ 17, 19, 20, 22, 46-48, Page ID # 89, 92. AMM's amended complaint advanced eight state and federal constitutional claims. One group of claims alleged the online ordination prohibition (Tenn. Code Ann. § 36-3-301(a)(2)) violated AMM's rights to equal protection, free exercise, free speech and violated the Establishment Clause by allowing some religious groups to ordain ministers but "deny[ing] that right to AMM and its ministers." *See, e.g.*, Am. Compl., R. 19, Page ID # 86; *see generally id.* ¶¶ 74-105, Page ID # 96-100. Another group of claims alleged violations of the Equal Protection and Establishment Clauses based on "the state's willingness to stipulate to allow ULCM's ministers to solemnize marriages, but not AMM's, discriminat[ing] against AMM ministers … only on the basis of which religious organization ordained them as ministers." *Id.* ¶ 78, Page ID # 97; *see id.* ¶ 84, Page ID # 98. AMM also alleged violations of the due process clause, the "unconstitutional conditions doctrine," and two Tennessee constitutional provisions. *Id.* ¶¶ 106-127, Page ID # 100-103. AMM sought prospective relief, including an injunction against enforcement of the online ordination prohibition and the false statements statute and a declaration that the prohibition is unconstitutional "facially and as applied." *Id.* at Page ID # 104.

After granting a default judgment against the Morgan County clerk, *see* Entry of Default, R., 32, Page ID # 201, the district court granted in part and denied in part

the remaining Defendants' motion to dismiss. Most relevant here, it held that AMM could not establish standing against any Defendant based on a "credible threat of prosecution," including under a diversion-of-resources theory. Order on Defs.' Mot. to Dismiss, R. 31, Page ID # 182-84, 187-89. Because the Morgan County district attorney was not a party to the ULC litigation, the court dismissed him. *Id.* at Page ID # 183-84, 187. But the court held that AMM had standing to sue Generals Jones and Wamp based on its "allegations of pecuniary and reputational harm" flowing from Defendants' agreeing to settle with ULC but declining to settle and "'acknowledge'" their lack of enforcement authority as to AMM. *Id.* at Page ID # 191, 193 (quoting Am. Compl., R. 19, at Page ID # 89).[1] The court dismissed AMM's due process and unconstitutional-conditions claims, though, since AMM's differential-treatment injury was not traceable to the alleged problems with the statutory language that those claims challenged. *Id.* at Page ID # 196-97.

The district court denied Generals Jones' and Wamp's sovereign immunity defenses as to all but AMM's state-law claims. *Id.* at Page ID # 198. The court asserted with little analysis that AMM alleged ongoing violations of federal law and

---

[1] The court also declined to decide whether AMM could proceed on a diversion-of-resources theory against Generals Jones and Wamp, Order on Defs.' Mot. to Dismiss, R. 31, Page ID # 191, but AMM did not press that theory at summary judgment, *see* AMM's MSJ Br., R. 50, Page ID # 795 (relying on reputational injury theory); AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 835-37 (relying on reputational injuries and related loss in revenue and request for refund and mentioning "devot[ing] resources" to "questions and complaints" without citing any evidence).

sought "injunctive relief that w[ould] prevent Jones and Wamp from violating its rights going forward." *Id.*

The parties then proceeded to discovery on AMM's federal equal protection, free exercise, establishment, and free speech claims against Generals Jones and Wamp. *See id.* at Page ID # 199. As relevant here, Generals Jones and Wamp confirmed in their discovery responses and their deposition testimony that they lack authority to prosecute AMM under the online ordination prohibition and the false statements statute. Joint App., R. 49-1, Page ID # 378-79, 388-89; *see also* Defs.' MSJ Br., R. 48, Page ID # 282 (collecting record cites).

Generals Jones and Wamp also explained why they declined to agree to AMM's stipulations. Both testified that AMM's stipulations were "quite a bit more broad" than the ULC stipulations and purported to extend beyond Defendants' "specific jurisdiction[s]." *See, e.g.*, Joint App., R. 49-1, Page ID # 504 (Wamp Dep.); *see id.* at Page ID # 530 (Jones Dep.) (describing the stipulations as "vastly more encompassing"). General Wamp also testified that AMM's proposal included stipulations that were not even "logistically possible." *Id.* at Page ID # 504. And General Jones further explained that he thought the ULC stipulations had "put … to bed" the issue of the online ordination prohibition's constitutionality, and he didn't want to agree to another stipulation that would just generate another challenge in future from "a third party." *Id.* at Page ID # 530-31. Both Generals Jones and Wamp also

affirmed that they had no knowledge of AMM outside of this lawsuit and did not even "have an understanding of whether AMM qualifies as a religious organization" or "how AMM ordains its ministers." *Id.* at Page ID # 531-32 (Jones); *see id.* at Page ID # 479-80 (similar for Wamp).

In support of its reputational and economic harms theory of standing, AMM produced calls and emails from prospective ministers and others inquiring about the legitimacy of marriages solemnized by online-ordained ministers in Tennessee. *See id.* at Page ID # 317-368. None of these communications stated that the writer sought to solemnize marriages in General Jones' or Wamp's counties. *See id.* at Page ID # 317, 318, 331, 348, 353, 354, 369 (referencing Morgan, Benton, Davidson, Shelby, and Knox Counties). Nor did AMM collect that information. *Id.* at Page ID # 538-542. In fact, AMM's online ordination form does not ask ministers where they intend to solemnize marriages; it only asks for their address. *Id.* at 535-37.

To show economic harm, AMM provided a declaration from its Executive Director stating that the number of AMM's Tennessee-based minister ordinations fell from 4,126 in 2023 to 3,869 Tennessee-based minister ordinations statewide in 2024, the year after the ULC stipulations. Supp. Joint App., R. 52-1, Page ID # 856-57; *see Nabors*, 2023 WL 5624706 (Aug. 29, 2023). AMM produced no data about the number of Tennessee-based minister ordinations from September to December 2023 or in 2025. Nor did AMM's Executive Director attribute the drop to the ULC

stipulations. *See* Supp. Joint App., R. 52-1, Page ID # 856-57. Indeed, AMM's Tennessee-based income increased from $57,528 in 2023 to $70,000 in 2024. Joint App., R. 49-1, Page ID # 549, 613. AMM also produced one email requesting a refund but no evidence that it actually provided one, the amount of the refund, or any evidence that it lost money on other refunds. *Id.* at Page ID # 347. Nor does AMM track its income by judicial district, so it could not say whether it suffered any decline in revenue in Generals Jones' and Wamp's counties. *Id.* at Page ID # 549.

After discovery concluded, the district court resolved the parties' cross-motions for summary judgment by denying AMM's and granting Defendants'. Order on Mots. for Summ. J., R. 56, Page ID # 918. The Court reaffirmed its motion-to-dismiss stage holding that sovereign immunity did not bar AMM's claims. *Id.* at Page ID # 900-01. Although it agreed with Defendants that it could not enjoin them under *Ex Parte Young* to "make the same promises they made in [the ULC] stipulations to AMM," it held that it could still grant AMM non-requested prospective relief, such as "an injunction enjoining Defendants from engaging in disparate treatment of AMM as compared to ULCM with respect to the Online Ordination Ban." *Id.* at Page ID # 901 (quotations omitted); *cf.* Am Compl., R.19, Page ID # 104.

The court also held that the summary judgment evidence "bor[e] out" AMM's theory of "organizational standing based on pecuniary and reputational harm." Order on Mots. for Summ. J., R. 56, Page ID # 892. The court relied heavily on AMM's

15

prospective minister inquiries, pointing in particular to an email citing the ULC stipulations and asking whether AMM ministers are "legal[ly] recognized" in Tennessee. *Id.* at Page ID # 892-93 (citing Joint App., R. 49-1, Page ID # 320). That email "alone," the court reasoned, established "pecuniary and reputational injury," traceable to the stipulations' granting ULC a "privileged status" vis-à-vis AMM, and redressable by relief such as an injunction of future "disparate treatment of AMM and ULCM." *Id.* The court said such relief "would allow AMM to demonstrate to customers like this writer that it enjoys the same legal status and privileges as ULCM." *Id.* The court also inferred "pecuniary and reputational harm *related* to the ULCM stipulations" from the evidence of a decline in online-ordained ministers in 2024, in combination with the customer-communications evidence. *Id.* And, finally, the court rejected Defendants' argument that any evidence of harm must be tied to their judicial districts, saying that reasoning applied only to AMM's rejected enforcement-based theory of standing. *Id.* at Page ID # 894-95.

Consistent with its motion-to-dismiss-stage reasoning, though, the court held that AMM lacked standing to "press claims challenging the statutory text" as opposed to "Defendants' official conduct in relation to the statute"—i.e., AMM couldn't bring a pre-enforcement challenge; it could only challenge Defendants' stipulation-related conduct. *Id.* at Page ID # 898. Thus, the court held that Defendants were "entitled to summary judgment for lack of standing" on AMM's "facial

challenges under the Equal Protection, Establishment, and Free Exercise Clauses." *Id.* at Page ID # 898-99. The court later held that AMM abandoned its free speech claim and any free exercise claim "consistent with the scope of its standing." *Id.* at Page ID # 906-07. That left only AMM's claims challenging Generals Jones and Wamp's alleged differential treatment of AMM as compared to ULC under the Establishment and Equal Protection Clauses. *Id.* at Page ID # 899.

And the district court held both those claims failed on the merits. As to AMM's Establishment Clause claim, the court held that AMM did not establish "denominational discrimination sufficient to show an Establishment Clause violation." *Id.* at Page ID # 905. More specifically, AMM did not "cite any evidence" of "a denominational difference between it and ULCM" or "otherwise explain how Defendants' disparate treatment of AMM and ULCM constitutes denominational discrimination." *Id.* Thus, the court held that Defendants were entitled to summary judgment on AMM's Establishment Clause claim. *Id.* at Page ID # 906.

As to AMM's Equal Protection Clause claim, the court first held that heightened scrutiny did not apply, as AMM contended, because the "record d[id] not support a finding that Defendants' disparate treatment of AMM and ULCM [was] based on religion." *Id.* at Page ID # 909. "[E]ven if AMM had established" "any relevant religion-based distinction" between the two, the court reasoned, it would still have to "show that Defendants' conduct was *based* on its religion as opposed to ULCM's

religion" to establish a suspect class for equal protection purposes. *Id.* at Page ID # 909 & n.18. Given that AMM established no other basis for applying heightened scrutiny, the court held that AMM's equal protection claim "must be evaluated under rational basis review." *Id.* at Page ID # 909-10.

In its equal protection analysis, the court held that AMM and ULC were similarly situated, given that they compete to offer "the same customers" online ordination services in Tennessee "notwithstanding the Online Ordination Ban." *Id.* at Page ID # 915. But the court held that AMM failed to satisfy its heavy burden to "dispel 'every conceivable basis that might support' Defendants' conduct." *Id.* at Page ID # 917 (citation omitted). It was rational, the court reasoned, "for Defendants to enter into the ULC stipulations" because they resolved ULC's lawsuit against them. *Id.* at Page ID # 916. And it was likewise rational for Defendants to decline to repeat the "rather extraordinary official act" of "ma[king] promises about a subject matter and a statute outside of their authority." *Id.* at Page ID # 917. Thus, the court held that Defendants were entitled to summary judgment on AMM's equal protection claim. *Id.* at Page ID # 918.

AMM timely appealed from the court's final judgment dismissing their claims. *See id.* at Page ID # 918; Notice of Appeal, R. 58, Page ID # 920.

## SUMMARY OF THE ARGUMENT

This Court has three independent paths to affirming the district court's grant of summary judgment for Defendants: sovereign immunity, standing, and the merits. And though Generals Jones and Wamp need only win one of these issues to secure affirmance, they prevail on all three.

**I.** Sovereign immunity bars AMM's claims. Here, the district court found no threat of future enforcement by Defendants. That meant there was no "specified un[constitutional] action[]" for a court to enjoin under the *Ex parte Young* exception. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). But the district court mistakenly proceeded on the theory that it could "enjoin[]" Generals Jones and Wamp "from engaging in disparate treatment." Order on Mots. for Summ. J., R. 56, Page ID # 901. That proposed order lacks the necessary specificity for a valid injunction and would do grave federalism and separation-of-powers harm.

Though the district court said otherwise, its proposed injunction would effectively mandate affirmative action. On AMM's theory of injury, enjoining the Defendants to refrain from "disparate treatment" would require Defendants to extend its promises to ULC to AMM. Order on Mots. for Summ. J., R. 56, Page ID # 901. *Young* doesn't authorize such compulsory injunctions of state officials.

**II.** Nor does AMM have standing to assert its remaining claims for prospective relief. That would require it to show likely future injuries that "'likely

will be caused by' the defendant's enforcement of the challenged law." *Tenn. Conf. of NAACP v. Lee*, 139 F.4th 556, 562 (6th Cir. 2025).

**A.** But AMM failed to trace any injury to Generals Jones and Wamp. Its claimed reputational and economic injuries flow not from any official acts of the district attorneys, but from AMM's representations to online-ordination clients that they may legally perform marriages in Tennessee—despite § 36-3-301(a)(2)'s prohibition on solemnizing marriage as an online-ordained minister. No injunction against these Defendants could prevent the resulting client confusion and consternation. The district court held otherwise by ignoring AMM's need to show entitlement to prospective relief, adopting AMM's misreading of the ULC stipulations, and crafting its own un-pleaded relief that would be ineffective to boot. AMM thus lacks standing as a matter of law.

**B.** And AMM also failed to make the necessary factual showing to prove standing at summary judgment. Its proof of economic harm consisted of a one-year decline in ordinations unaccompanied by a decline in revenue, and AMM's scant evidence that Defendants' conduct harmed its reputation fails to show similar future harms are likely as opposed to speculative. That won't cut it in the pre-enforcement posture. Thus, the district court erred in allowing AMM's claims to proceed.

**III.** AMM's remaining claims—based on the Establishment and Equal Protection Clauses—also fail on the merits.

**A.** Although the Establishment Clause bars the State from "officially prefe[ring] one religious denomination over another," no such preference occurred here. *Cath. Charities Bureau, Inc. v. Wis. Labor & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025) (cleaned up). Litigation strategy, not denominational discrimination, drove Defendants' differential treatment of AMM and ULC, as the district court correctly held. AMM proffered no evidence to the contrary. Nor do Defendants' litigation decisions somehow "give ULC a favored position," AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 846, or implicate an as-yet-undiscovered Establishment Clause constraint on state officials' litigation conduct. None of AMM's attempts to impeach the district court's logic persuade.

**B.** AMM's equal protection arguments also falter. AMM seeks broader stipulations than those Defendants afforded to ULC, so AMM is not "similarly situated" in the relevant sense. *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quotations omitted). Thus, the district court correctly applied rational basis review and then rejected AMM's claim. But heightened scrutiny wouldn't apply regardless. Religion is not a suspect-classification under the Fourteenth Amendment, and even if it were, any disparate treatment here was not the result of religious discrimination. Simply put, all roads lead to rational basis review. And that's fatal for AMM's claim, since they have forfeited any challenge to the district court's holding that Defendants' conduct satisfies that lenient test.

**STANDARD OF REVIEW**

This Court reviews de novo a district court's order granting summary judgment, including "determinations of standing." *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Syst.*, 922 F.3d 713, 722 (6th Cir. 2019); *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013). "Summary judgment is warranted if, viewing the facts in the light most favorable to the nonmoving party, no material fact is subject to a genuine dispute" and "the movant is entitled to judgment as a matter of law." *Med. Ctr.*, 922 F.3d at 722; Fed. R. Civ. P. 56(a).

**ARGUMENT**

**I. Tennessee's Sovereign Immunity Forecloses Any Viable Relief.**

Tennessee's sovereign immunity forecloses any viable path to relief against Generals Jones and Wamp. As the district court recognized, AMM did not establish actual or threatened enforcement of the online ordination or false statements statutes. There was thus no "specified un[constitutional] action[]" for the court to enjoin. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021); *see Child.'s Healthcare is Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415-16 (6th Cir. 1996) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). The court likewise "agree[d]" with Generals Jones and Wamp that it could not compel their "affirmative act[s]." Order on Mots. for Summ. J., R. 56, Page ID # 901; *see TransAmerica Assur. Corp. v. Settlement Cap. Corp.*, 489 F.3d 256, 260 (6th Cir. 2007) (citing *Larson v. Domestic & Foreign*

*Com. Corp.*, 337 U.S. 682, 687 (1949)); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam); *Pennoyer v. McConnaughy*, 140 U.S. 1, 9-11 (1891) (citing *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 859 (1824)). This left the court no appropriate form of injunctive relief and thus no claims within its jurisdiction to adjudicate.

The district court nonetheless proceeded under the theory that it could "enjoin[]" the Generals "'from engaging in disparate treatment.'" Order on Mots. for Summ. J., R. 56, Page ID # 901. In doing so, it committed two fundamental errors.

*First*, the district court's proposed injunction would not have met federal standards for employing the "extraordinary remedy" of injunctive relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *see also Doe v. Lee*, 137 F.4th 569, 574-75 (6th Cir. 2025) (describing the guardrails placed on equity power due to its extraordinary nature). An injunction order "must … state [its] terms specifically" and "describe in reasonable detail … the … acts restrained." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (quoting Fed. R. Civ. P. 65(d)(l)). And the district court's idea to simply enjoin "disparate treatment" fails to clear that critical bar. Order on Mots. for Summ. J., R. 56, Page ID # 901.

Nor is this requirement some empty formality that can be lightly disregarded, as was done here. Principles of federalism and the separation of powers rightly cabin pre-enforcement challenges to state laws. *See Alden v. Maine*, 527 U.S. 706, 712–30 (1999); *see Stovall v. Jefferson Cnty. Bd. of Educ.*, 164 F.4th 554, 559-60, 563-

64 (6th Cir. 2026). And "[i]njunctive relief involving matters subject to state regulation may be no broader than necessary to remedy [a] constitutional violation." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998) (citing *Knop v. Johnson*, 977 F.2d 996, 1008 (6th Cir. 1992)). Yet here, the district court reached the merits only by claiming the power to issue an opaque injunction—one that would have left Generals Jones and Wamp guessing about "exactly what conduct is proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted). If Rule 65(d)(1) requires "specific[]" "terms" and "reasonable detail" before a court grants an injunction in an ordinary case, Fed. R. Civ. P. 65(d)(1), how much more carefully must lower courts exercise that power when it involves *Ex parte Young*'s "narrow exception" to sovereign immunity, *Cooperrider v. Woods*, 127 F.4th 1019, 1043-44 (6th Cir. 2025) (citation omitted). The district court's vague proposed injunction would have crossed those important limits. *Cromer*, 31 F.4th at 363-64.

*Second* and relatedly, the injunction proposed here illustrates the perils of failing to observe Rule 65(d)(1)'s strictures in exercising the "awesome" injunctive power. *Doe*, 137 F.4th at 575. Although the district court dressed up its proposed relief as a permissible prohibitory injunction under the *Ex parte Young* doctrine, the court effectively held that it could grant *mandatory* relief. To be sure, the district court agreed that it could not "requir[e] Defendants to make the same promises they made in th[e ULC] stipulations to AMM" because such relief "would go

24

impermissibly beyond 'command[ing Defendants to] refrain from violating federal law.'" Order on Mots. for Summ. J., R. 56, Page ID # 901 (citation omitted). But the district court's relief purported to address AMM's claim that Generals Wamp and Jones had treated it differently from ULC by refusing to stipulate to non-enforcement of the online ordination statute. *See, e.g.*, AMM's MSJ Br., R. 50, Page ID # 795. And the only way for Jones and Wamp to *not* treat ULC and AMM differently under AMM's theory would have been for Generals Jones and Wamp to take some *affirmative* action to promise future non-enforcement of the online ordination statute.

By effectively "requir[ing]" such official "'action'" by Generals Jones and Wamp, the district court's proposed injunction would have granted "'relief against'" the State of Tennessee itself, which "is barred" by sovereign immunity. *TransAmerica*, 489 F.3d at 260 (quoting *Larson*, 337 U.S. at 687); *see Hawaii*, 373 U.S. at 58. Indeed, it was "well settled" long before *Ex parte Young* "that a suit … to *compel* [state officers] to do [certain] acts … is, in effect, a suit against the state." *Pennoyer*, 140 U.S. at 9. The *Young* doctrine does not abrogate that rule; it merely recognizes a constitutional corollary: a law "repugnant to the [C]onstitution" can "furnish no authority" authorizing official state action. *Id.* at 11 (citation omitted); *see TransAmerica*, 489 F.3d at 260 n.2.

The district court could thus have stayed within its constitutional role by "prohibiting [Generals Jones and Wamp] from exercising … powers" unlawfully

granted, but it erred by holding it could effectively *mandate* that Defendants take official action on behalf of the State. *Doe v. Lee*, 102 F.4th 330, 342 (6th Cir. 2024); *see Larson*, 337 U.S. at 691 n.1. That would have made the State "not only the real party to the controversy, but the real party against which relief" effectively issued. *Hagood v. Southern*, 117 U.S. 52, 67 (1886); *see TransAmerica*, 489 F.3d at 262.

That the district court proposed to do more than "prohibit[]" an unlawful exercise of future powers is confirmed by the causation and redressability problems addressed in the standing section below. *Doe*, 102 F.4th at 342; *see infra* Part II. If Generals Jones and Wamp were merely prohibited from applying the online ordination prohibition to AMM in a discriminatory way "going forward," *cf.* Order on Mots. to Dismiss, R. 31, Page ID # 198, such relief would fail to have any "real-world effect," *Western Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1298-99 (10th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)). The online ordination prohibition would still bar online-ordained ministers of both groups from solemnizing marriages. Tenn. Code Ann. § 36-3-301(a)(2). But *Ex parte Young*'s application turns on "the availability of prospective relief of the sort awarded [there]," so it cannot apply absent an injury redressable by such relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see id.* at 67-69, 74.

One way or another, then, sovereign immunity bars AMM's claims. The Court can affirm the judgment below on this basis, if nothing else. *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 403 (6th Cir. 2003).

## II. AMM Lacks Standing to Assert Its Remaining Claims.

Article III standing also poses a bar to AMM's suit. Organizations, like AMM, "may have standing 'to sue on their own behalf for injuries they have sustained.'"[2] *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). To do so, however, they "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393-94. And when a plaintiff requests "forward-looking relief," it "must face 'a real and immediate threat of repeated injury,'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citation omitted), one that "likely … will be caused by the defendant" and that the plaintiff's "requested judicial relief" would "likely" redress, *FDA*, 602 U.S. at 380.

The district court held that AMM only established standing to assert its Establishment and Equal Protection Clause claims challenging Generals Jones and Wamp's refusal to enter into AMM's requested stipulations, despite entering stipulations with ULC. Order on Mots. for Summ. J., R. 56, Page ID # 898-99 & n.13.

---

[2] AMM disclaimed an associational standing theory below. AMM's Resp. to Defs.' Mot. to Dismiss, R. 24, Page ID # 139.

By failing to challenge that holding in its opening brief, AMM has forfeited the right to so do in this appeal. *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021) (collecting cases). So, the only standing question is whether that claimed differential treatment can establish Article III standing.

The answer is that it cannot. AMM has not established a likelihood of "repeated injury" at the hands of these Defendants. *Murthy*, 603 U.S. at 58. Its reputational and economic harms are not traceable to Generals Jones and Wamp, much less to any unidentified future differentiation by them. Nor would the unrequested relief the district court fashioned for AMM actually redress its injuries. And even if AMM had established an injury as a matter of law, its summary judgment proof failed to establish its injuries as a matter of fact. The district court erred by failing to dismiss AMM's Establishment and Equal Protection Clause claims for lack of standing.

### A.      AMM failed to establish standing to pursue prospective relief.

Legally, AMM's standing theory fails because AMM has not "establish[ed] a substantial risk of future injury that is traceable to [Generals Jones and Wamp] and likely to be redressed by an injunction against them." *Murthy*, 603 U.S. at 69. The district court erred by holding otherwise.

**1.** Ordinarily, a plaintiff, like AMM, that seeks an injunction of a state law would have to show that its anticipated injuries "'likely will be caused by' the defendant's enforcement of the challenged law." *Lee*, 139 F.4th at 562 (quoting *FDA*,

602 U.S. at 382). Again, that's "ordinarily substantially more difficult" for parties who, like AMM, are not directly regulated by the challenged law but rely on "[in]direct[] [e]ffect[s]" to the plaintiff's interests from the law's regulation of a third party. *FDA*, 602 U.S. at 379, 382 (citation omitted). In such cases, a plaintiff "must show that the 'third parties will likely react in predictable ways' that in turn will injure the plaintiffs." *Id.* at 383 (quoting *California v. Texas*, 593 U.S. 659, 675 (2021)).

That framework is a poor fit for AMM's standing theory for good reason: AMM's remaining injuries—at best—stem from past disavowals of enforcement authority. *See supra* pp. 12-13. And a plaintiff seeking forward-looking relief must trace their injuries to "allegedly wrongful behavior [that] w[ould] *likely* occur or continue." *Murthy*, 603 U.S. at 69 (second alteration in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000)). For example, in *ULC*, this Court held that ULC could not "obtain a decree" enjoining Williamson County's district attorney, unless it alleged that it was "'likely to suffer future'" harm in Williamson County. 35 F.4th at 1034 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Here, other than its rejected criminal enforcement theory, AMM has never identified any "wrongful behavior" by Generals Jones and Wamp that is within their authority and "likely" to occur in future. *See Murthy*, 603 U.S. at 69 (quoting *Friends of the Earth*, 528 U.S. at 190). Thus, AMM has failed to establish "a likelihood of future injury traceable" to Generals Jones and Wamp. *See id.* at 72.

But even assuming AMM could rely on *past* action alone, its reputational and economic injuries are not traceable to any stipulation-related conduct by Generals Jones and Wamp. In support of standing at summary judgment, AMM argued that "prospective and actual ministers have accused AMM of *defrauding* them because of the inconsistency between AMM's assertion that its ministers are entitled to officiate wedding's and the Online Ordination Ban's apparent prohibition on such conduct," AMM's MSJ Br., R. 50, Page ID # 795—with resulting harm to its reputation and its revenue, AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 835-37. As that framing demonstrates, any reputational or derivative economic harms suffered by AMM resulted not from Generals Jones and Wamp's stipulation-related conduct but from a cause closer to home: "the inconsistency" between AMM's claim that its ministers are "legally empowered under the protections of [the] Tennessee Code Section 36-3-301 to officiate wedding ceremonies," Joint App., R. 49-1, Page ID # 582, and § 36-3-301(a)(2)'s statement that "[p]ersons receiving online ordinations may not solemnize the rite of matrimony," Tenn. Code Ann. § 36-3-301(a)(2). AMM's own summary judgment proof confirms that causal logic.[3] Even if Generals Jones and Wamp stipulated to non-enforcement of the online ordination prohibition

---

[3] For example, one email AMM cited complains, "[y]ou state on your website that your ordination is accepted in Tennessee" when "the TN law you [c]ite clearly states that online ordination is not able to solemnize a marriage in Tennessee." AMM's MSJ Br., R. 50, Page ID # 792 (quoting Joint App., R. 49-1, Page ID # 346); *see also, e.g.*, Joint App., R. 49-1, Page ID # 330 (identifying the same conflict).

against AMM and its ministers, that would not change the statutory text prohibiting solemnization of marriage by an online-ordained minister. *See id.* Nor would it legitimize for purposes of state law or enforcement by other state officials any marriages solemnized by AMM ministers who were ordained online.

AMM also argued that the stipulations had "exacerbated" "confusion about that inconsistency" because ULC, unlike AMM, could claim to be "exempt from the Online Ordination Ban." AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 836; AMM's MSJ Br., R. 50, Page ID # 792. But again, any harm to AMM caused by a third party's perception that the stipulations exempted ULC from the online ordination prohibition are not traceable to Generals Jones and Wamp's conduct. The ULC stipulations did not grant ULC an exemption from the online ordination statute or otherwise suggest that online-ordained ULC ministers could "solemnize the rite of matrimony" in Tennessee. *See* Tenn. Code Ann. § 36-3-301(a)(2); *Nabors*, 2023 WL 5624706, at *1. The stipulations simply said that the three district attorney defendants there could not criminally enforce the online ordination prohibition and that signing a Tennessee marriage certificate as an online-ordained minister did not violate the false statements statute in their view. *Nabors*, 2023 WL 5624706, at *1. Any competitive harm flowing from ULC's inaccurate representation otherwise, *cf.* Joint App., R. 49-1, Page ID # 374, is traceable to ULC, not Defendants.

31

The "flip side" of AMM's causation problem is a redressability issue. *FDA*, 602 U.S. at 380 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). "To invoke federal jurisdiction, [a] plaintiff[] ha[s] the burden of showing some 'viable remedy' [a court] can dispense that would at least partially relieve [its] injury." *ULC*, 35 F.4th at 1033 (quoting *Alston v. Advanced Brands & Imp. Co.*, 494 F.3d 562, 565 (6th Cir. 2007)). And it has the "burden" to "clearly make [any] request" for relief "in its complaint." *Glennborough*, 21 F.4th at 417; *see Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197, 211 (4th Cir. 2025) ("To assess redressability, we look to the relief that was requested by the plaintiff in its complaint.").

Here, AMM requested broad relief from enforcement of the online ordination bar (§ 36-3-301(a)(2)) and the false statements statute (§ 39-16-504), as well as a declaratory judgment that § 36-3-301 and Defendants' "practice of denying AMM ministers the authority … to officiate weddings" are unconstitutional. Am. Compl., R. 19, Page ID # 104. But the district court's holdings that AMM lacked standing to pursue relief from future "criminal prosecution" and "to bring claims" challenging the online ordination prohibition's "statutory text" knocked out those avenues for relief. Order on Defs.' Mot. to Dismiss, R.31, Page ID # 189; Order on Mots. for Summ. J., R. 56, Page ID # 895-97. AMM has not appealed those holdings, forfeiting the issues on appeal. *Glennborough*, 21 F.4th at 414.

That leaves AMM without any relief "requested … in its complaint." *See Maryland*, 151 F.4th at 211. To fill the gap, the district court held that AMM's "injury would be redressed by … an injunction prohibiting disparate treatment of AMM and ULCM." Order on Mots. for Summ. J., R. 56, Page ID # 893.

Even assuming AMM could rely on unpled relief to establish redressability, *but see Glennborough*, 21 F.4th at 417, the district court's proposed injunction would not redress its claimed differential treatment injury based on the ULC stipulations. To see this, consider "what would happen if [this Court] could somehow 'erase'" the ULC stipulations or somehow extend them to AMM. *ULC*, 35 F.4th at 1033. Either way, AMM-minister and "ULC-minister solemnization would *still* be clearly illegal under TCA § 36-3-301[.]" *Id.* And Generals Jones' and Wamp's disavowals of authority to prosecute under § 36-3-301 or the false statements statute would still apply. Said otherwise, with or without stipulations from the district attorneys, AMM's ministers would still be subject to the online ordination prohibition in § 36-3-301(a)(2) that it says conflicts harmfully with AMM's representations about its services' legitimacy and has caused a decline in demand for its services. To repeat, Generals Jones and Wamp cannot validate marriages that were illegally solemnized under § 36-3-301(a)(2) or force other state officials to treat illegal acts of solemnization as valid. And "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Glennborough*, 21 F.4th at 417 (alteration in

original) (quoting *Steel Co.*, 523 U.S. at 107); *see Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1072 (7th Cir. 2026) (similar).

In sum, "[t]o the extent [AMM] ha[s] been injured," it has failed to explain how Generals Jones and Wamp "caused the injury," and it has "also failed to show what a federal court could order [Generals Jones and Wamp] to do or refrain from doing to give [AMM] relief." *ULC*, 35 F.4th at 1032. "No article III case or controversy exists, therefore, against" Generals Jones and Wamp. *Id.*

**2.** The district court's standing analysis went awry at every element. As to injury, it reasoned that "the fact of the ULCM Stipulations … arguably takes this standing inquiry out of the pre-enforcement realm," which led to its conclusion that AMM could rely on past "pecuniary and reputational harm [to] satisfy the injury requirement." Order on Defs.' Mot. to Dismiss, R. 31, Page ID # 188, 191; *see* Order on Mots. for Summ. J., R.56, Page ID # 892-93 (examining evidence that "AMM has suffered a pecuniary and reputational injury"). But to obtain prospective relief, AMM had to show a likelihood of future or continuing "'allegedly wrongful behavior'" that would likely cause it "future injury." *Murthy*, 603 U.S. at 69 (quoting *Friends of the Earth*, 528 U.S. at 190). That it did not do. *See Lee*, 139 F.4th at 562.

As to causation, the district court accepted at face value AMM's allegation at the motion-to-dismiss stage that "Jones and Wamp's refusal to extend the ULCM Stipulations" caused AMM's inability to tell prospective ministers that its "services

will be effective." Order on Defs.' Mot. to Dismiss, R. 31, Page ID # 193. And then, at summary judgment, it treated customers' perceptions of the effect of the ULC stipulations as evidence that Generals Jones' and Wamp's stipulation-related conduct caused AMM's claimed reputational and economic harm. Order on Mots. for Summ. J., R. 56, Page ID # 893-94. That reasoning ignores the "real-world effect" of the ULC stipulations, *Western Watersheds Project*, 62 F.4th at 1298-99, which did not legitimize ULC's online ordinations vis-à-vis AMM's online ordinations as a matter of law, *see Nabors*, 2023 WL 5624706, at *1. Again, whether Defendants stipulate that they lack enforcement authority against AMM has no bearing on whether marriages are valid as a matter of state law and whether other state officials must recognize marriages solemnized by AMM ministers as valid. *Supra* p. 33.

Finally, the district court held that its injunction could redress AMM's injury by "allow[ing] AMM to demonstrate to customers … that it enjoys the same legal status and privileges as ULCM," Order on Mots. for Summ. J., R. 56, Page ID # 893—that is, by effectively giving AMM an "advisory opinion," *Western Watersheds Project*, 62 F.4th at 1298-99. But courts are in the business of granting relief that makes a difference. *See Glennborough*, 21 F.4th at 417. "[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (emphasis in

original) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in judgment)). AMM may want a legal document it can point to—however misleadingly—to say that its online ordinations in Tennessee are legitimate. But that's not relief an Article III court may grant. *See Glennborough*, 21 F.4th at 417; *Steel Co.*, 523 U.S. at 107.

**B.** **AMM's summary-judgment evidence failed to establish standing.**

Even if AMM could somehow get past its failure to establish standing as a matter of law, the district court erred by holding that AMM proved standing as a factual matter. *See* Order on Mots. for Summ. J., R. 56, Page ID # 892.

At summary judgment, a plaintiff "must introduce evidence setting forth 'specific facts' that establish its standing (if [the court] accept[s] those facts as true)," and the plaintiff "may not rely on '[c]onclusory allegations' to meet this evidentiary burden." *Lee*, 139 F.4th at 566 (quoting *Somberg v. McDonald*, 117 F.4th 375, 378 (6th Cir. 2024); and then quoting *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022)). To obtain prospective relief, "plaintiffs must proffer evidence that the defendants' 'allegedly wrongful behavior w[ould] *likely* occur or continue" and "likely" cause "future injury." *Murthy*, 603 U.S. at 69 (alteration in original) (quoting *Friends of the Earth*, 528 U.S. at 190).

To prove entitlement to forward-looking relief against Generals Jones and Wamp, then, AMM had to prove that Defendants were likely to take future official actions that would harm AMM.

**1.** AMM failed to "demonstrate likely future" reputational and monetary harm "at [Defendants'] hands" for two reasons. *See id.* at 70.

*First*, although evidence of past harm may "help show imminent future harm" of "the same kind … from the same defendant," AMM's summary judgment proof of economic harm lacked the requisite specificity this Court has required to prove standing. *See Lee*, 139 F.4th at 567. AMM "did not introduce into the summary-judgment record a single '*specific*' example of any actual costs incurred" or revenue lost in Generals Jones' and Wamp's districts or elsewhere. *Id.* (quoting *Somberg*, 117 F.4th at 378). To the contrary, the record showed that AMM's revenue *increased* statewide in 2024. Joint App., R. 49-1, Page ID # 549-50, 613; *see* AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 837 (conceding as much). Nor did AMM show that any lost revenue "had been caused by" Generals Jones' and Wamp's conduct "rather than by, say," publicity generated by the ULC stipulations that brought the online ordination prohibition to more prospective ministers' attention. *See Lee*, 139 F.4th at 567. So, AMM's summary judgment proof did not "even suffice[] to show '[p]ast'" economic injury traceable to Defendants' "allegedly 'illegal'" stipulation-related conduct. *Id.* (alteration in original)

*Second*, AMM relied exclusively on evidence of past harms with little to no "predictive value" for proving future injury traceable to these Defendants. *Murthy*, 603 U.S. at 59; *see Lee*, 139 F.4th at 567. Only two of the almost fifty client communications produced by AMM read the ULC stipulations to legitimize marriages solemnized by ULC ministers while leaving the legality of AMM-solemnized marriages in limbo, and neither of those writers suggested they would choose ordination by ULC over AMM for that reason. Joint App., R. 49-1, Page ID # 320, 337. The vast majority of AMM's calls and emails inquired about the legitimacy of AMM's online ordinations, given the writer's understanding that it was or might be illegal for online-ordained ministers to solemnize marriages in Tennessee. *See, e.g.*, *id.* at Page ID # 317-19, 322, 324-36, 338-68. This paltry evidence of prospective AMM clients reading the ULC stipulations to legitimize ULC ordinations shows that "the risk of future harm traceable" to the stipulations as opposed to § 36-3-301(a)(2) itself "is minimal." *Murthy*, 603 U.S. at 72. AMM "can only 'speculat[e] about" whether the future reactions of "third parties" may cause it harm. *Id.* So, it "is 'no more than conjecture'" on this evidentiary record "to assume that [AMM] will be subject to" future reputational and economic harm traceable to Generals Jones and Wamp. *Id.* (quoting *Lyons*, 461 U.S. at 108).

Nor is there any record evidence that anyone would seek to solemnize marriages in Defendants' districts in future and be deterred by some future official action

38

by them with resulting harm to AMM. None of AMM's record evidence—either supporting its reputational harms or its economic harms—identified a harm that occurred in Generals Jones and Wamp's districts. *See supra* p. 14. No prospective ministers who sought to solemnize marriages in those districts. *See supra* p. 14. No loss in revenues traced to those districts. *See supra* pp. 14-15. This evidence failed to demonstrate that Generals Jones and Wamp were "*likely*" to engage in *future* official conduct in their own districts causing AMM *future* reputational and/or economic injury. *See Murthy*, 603 U.S. at 69 (quoting *Friends of the Earth*, 528 U.S. at 190) (emphasis in original).

In short, because the record evidence did not "establish a likelihood of future injury traceable" to these Defendants, *id.* at 72, AMM failed to prove entitlement to "an injunction against *future* harm" on factual grounds alone, *Lee*, 139 F.4th at 567.

**2.** The district court was wrong to hold otherwise. Although it acknowledged AMM's burden to prove standing with "specific facts," Order on Defs.' Mots for Summ. J., R. 56, Page ID # 890, it did not require AMM to carry that burden in practice. Relying on one email arguably connecting the ULC stipulations to AMM's reputational harm, *id.* at Page ID # 893, the district court failed to consider whether one communication of almost fifty had a sufficient "predictive value" for proving future injury traceable to these Defendants, *Murthy*, 603 U.S. at 59—versus the online ordination prohibition or AMM's representations about it. And instead of

requiring AMM to prove its economic injuries with "specific facts," *Lee*, 139 F.4th at 566 (quoting *Somberg*, 117 F.4th at 378), the district court held that AMM established "pecuniary … injury" based on evidence of reputational harm and a one-year drop in ordained ministers. Order on Defs.' Mots for Summ. J., R. 56, Page ID # 892-95. That's not enough to "show 'a real and immediate threat of repeated injury.'" *Lee*, 139 F.4th at 567 (quoting *Murthy*, 603 U.S. at 58). Given these "evidentiary deficiencies," *id.*, the district court erred by holding that AMM established standing to assert its Establishment and Equal Protection Clause claims.

## III. AMM's Remaining Claims Fail on the Merits.

AMM failed to establish that Generals Jones and Wamp treated AMM differently from ULC on religious grounds. Rather, the record showed that Defendants entered stipulations with ULC, but not with AMM, as a litigation decision. Defendants then reasonably declined to repeat that "rather extraordinary official act" of stipulating not to enforce laws they say they lack authority to enforce. Order on Mots. for Summ. J., R. 56, Page ID # 917. Thus, the district court properly granted Defendants summary judgment on AMM's Establishment and Equal Protection Clause claims.

**A.     The district court correctly granted Defendants judgment as a matter of law on AMM's as-applied Establishment Clause claim.**

The district court properly rejected AMM's as-applied Establishment Clause claim because AMM has no evidence of denominational discrimination. *See* Order on Mots. for Summ. J., R.56, Page ID # 904-06. AMM's arguments otherwise fail.

**1.   The Establishment Clause bars official religious preferences on denominational grounds.**

The Establishment Clause forbids government actions that "'officially prefe[r]' one religious denomination over another." *Cath. Charities*, 605 U.S. at 247 (alteration in original) (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). That is, the Establishment Clause has a "'complementary' purpose[]" to that of the Free Exercise Clause. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022) (quoting *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 15 (1947)). It likewise forbids "discrimination 'on the basis of religious views or religious status.'" *Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1258 (10th Cir. 2008) (McConnell, J.) (quoting *Empl. Div. v. Smith*, 494 U.S. 872, 877 (1990)). When a "state law establishes a denominational preference, courts must 'treat the law as suspect' and apply 'strict scrutiny in adjudging its constitutionality.'" *Cath. Charities*, 605 U.S. at 248 (quoting *Larson*, 456 U.S. at 246).

"[The Supreme] Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy*, 597

41

U.S. at 535 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). So, "the plaintiff has the burden of proving a set of facts that … align with a historically disfavored establishmentarian practice." *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir 2023).

As this framework illustrates, there are three problems with AMM's Establishment Clause claim:

*First*, "[t]he critical weakness of [AMM's] establishment claim arises from the fact that" Defendants' stipulation decisions "simply d[id] not discriminate on the basis of religious affiliation or religious belief." *See Gillette*, 401 U.S. at 450; *see* Order on Mots. for Summ. J., R. 56, Page ID # 905-06 (similar). They differentiated not based on "religious views or religious status," *Weaver*, 534 F.3d at 1258 (quoting *Smith*, 494 U.S. at 877), but based on the fact that the organizations were in different litigation. ULC was a party to its lawsuit against Generals Jones and Wamp; AMM was not. It's clear from the face of the ULC stipulations order that a desire to end ULC's lawsuit, not any religious reason, drove the stipulations: The order states that the "parties agree to dismiss this lawsuit" "[b]ased on these stipulations." *Nabors*, 2023 WL 5624706, at \*1. And AMM admitted as much below, alleging in its amended complaint that "[a]s to solemnizing marriages in Tennessee, the difference between AMM and ULCM is not based on faith or circumstances, but only that ULCM already sued Tennessee." Am. Compl., R. 19 ¶ 63 Page ID # 95.

The evidentiary "record does not show favoritism" either. *See Hilsenrath on behalf of C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 493 (3d Cir. 2025). The only relevant claimed religious belief here is one AMM and ULC share—that ministers should be able to be ordained online. *See supra* pp. 9-10, 17. Generals Jones and Wamp's stipulation-related conduct takes no position on that belief and does not distinguish on that ground. Rather, as to both groups, Generals Jones and Wamp disclaim any power to enforce the online ordination bar. *See supra* p. 13. The only difference in treatment is that Generals Jones and Wamp formalized that view in opposition to ULC's suit by stipulating that they could not enforce the online ordination ban against ULC, while, as to AMM, they have primarily taken that position in opposition to this suit. AMM has never alleged or argued, much less proven, that that difference had anything to do with the organizations' religious status or beliefs. *Cf. Weaver*, 534 F.3d at 1258. That would be surprising indeed, given that neither General Jones nor General Wamp was even aware of AMM prior to its lawsuit and, even at the time of their depositions, did not know "whether AMM qualifie[d] as a religious organization" or "how AMM ordains its ministers." Joint App., R. 49-1, at Page ID # 531-32 (Jones); *see id.* at Page ID # 479 (similar for Wamp).

So, Generals Jones and Wamp's stipulation-related decision-making "draws no lines based on religion" and thus does not violate the Establishment Clause.

*Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1053 (9th Cir. 2025); *see Cath. Charities*, 605 U.S. at 247-48.

*Second*, there was no official preference. AMM argued below that, regardless of the stipulations' facial neutrality, they had the effect of "giv[ing] ULC a favored position." AMM's Resp. to Defs.' MSJ, R. 52, Page ID # 846. But that argument rested on AMM's flawed view that the stipulations "protect and legitimize" ULC's online ordinations and that Generals Jones and Wamp "refuse to make those same commitments" to AMM. *See* Appellant's Br. 29. As relevant here, the stipulations do nothing more than confirm that Generals Jones and Wamp cannot enforce a law they have "always" believed they lack the power to enforce against any minister, including AMM ministers. *See Nabors*, 2023 WL 5624706, at *1; *supra* p. 13. The stipulations do not legitimize solemnizations of marriage by ULC's ministers, any more than they disfavor solemnizations performed by AMM's. Section 36-3-301 continues to bar ministers ordained online by both groups from solemnizing marriages in Tennessee. *See* Tenn. Code Ann. § 36-3-301(a)(2).

*Finally*, AMM does not satisfy its "burden" to demonstrate that the Establishment Clause applies to state officials' litigation conduct.[4] *Firewalker-Fields*, 58

---

[4] There is reason for "skepticism toward the incorporation of the Establishment Clause" against the States. *Cath. Charities*, 605 U.S. at 256 n.1 (Thomas, J., concurring). At the Founding, States maintained established churches. *See* Philip Hamburger, *Separation of Church and State* 9-10 (2002). The Establishment Clause operated as "a federalism provision intended to prevent Congress from *interfering*

F.4th at 122 n.7. AMM cites no historical evidence indicating that litigation conduct is the kind of "official denominational preference that the Framers of the First Amendment forbade." *Larson*, 456 U.S. at 255. Indeed, the Establishment Clause states that "Congress shall make no *law* respecting an establishment of religion." U.S. Const. amend. I (emphasis added). And the Supreme Court's Establishment Clause cases typically reference "laws" that "aid one religion" or "prefer one religion over another." *Larson*, 456 U.S. at 246 (quoting *Everson*, 330 U.S. at 15); *Cath. Charities*, 605 U.S. at 247 (same); *Gillette*, 401 U.S. at 450 (same); *see McGowan v. Maryland*, 366 U.S. 420, 443-44 (1961) (similar); *People of Ill. ex rel. McCollum v. Bd. of Educ. of Sch. Dist. No. 71*, 333 U.S. 203, 210-11 (1948) (similar).

AMM does not cite a single case applying the Establishment Clause to a government actor's litigation conduct. That makes sense: "Discrimination" commonly means "the 'failure to treat all persons equally when'" the differentially treated groups or individuals are "similarly situated" and "there is no justification for the difference in treatment." *See, e.g.*, *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 280, 286-87 (2011) (quotations omitted). But litigation is likely to produce numerous legitimate justifications for treating the opposing party in one suit differently than a non-party or an opposing party in a different suit. A non-party or an

---

*with state establishments*." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 49 (2004) (Thomas, J., concurring in judgment) (emphasis added).

opposing party in separate litigation is unlikely to be "similarly situated" in every material respect to a party with whom a government entity previously settled. *Cf. id.*

For all these reasons, the district court correctly granted Defendants judgment as a matter of law on AMM's as-applied Establishment Clause claim.

### 2. AMM's arguments fail.

AMM's opening brief makes several sallies against the district court's correct rejection of their Establishment Clause claim. None succeeds.

*First*, AMM claims that Defendants violated the Establishment Clause because "[t]heir stipulation with ULCM, which expressly carves out legal protection for ULCM and its ministers alone, aids and promotes one religious organization[] or sect, to the detriment of others" by "confer[ring] a governmental stamp of legitimacy on ULCM while denying that to AMM." Appellant's Br. 18-19. In other words, AMM argues that the ULC stipulations favor ULC by legitimizing its online ordained ministers. But as discussed, the stipulations themselves refute that view. *Nabors*, 2023 WL 5624706, at *1. They express no position on the "legitimacy" of ULC ministers' online ordinations. Appellant's Br. 19. Nor do they "carve[] out legal protection for ULCM and its ministers." *Id.* at 18. Rather, they state Generals Jones' and Wamp's belief that they cannot prosecute anyone under the online ordination statute, including ULC ministers. *Id.* General Jones conceded in his deposition testimony that the stipulations bound him not to enforce the online ordination

statute against ULC, but, as he put it, "[t]he entirety of the Tennessee Code Anno-tated … would prevent [him] from taking action against anyone else under the 'no ordination by Internet statute.'" Joint App., R. 49-1, Page ID # 529. And General Wamp testified that the position she took in the ULC suit would apply identically to AMM or "anybody that online ordains." *Id.* at Page ID # 505. So, there's no aid to or promotion of ULCM versus AMM.

*Second*, AMM takes issue with the district court's reasoning, primarily by claiming the district court invented a "new" Establishment Clause test—a "'denom-inational difference' test." Appellant's Br. 20. But in determining whether Defend-ants violated the Establishment Clause by discriminating between AMM and ULCM—as AMM claims they have—the district court properly focused on whether there was in fact any "denominational discrimination." *Cath. Charities*, 605 U.S. at 248; *see* Order on Mots. for Summ. J., R. 56, Page ID# 904-06.

None of AMM's authorities suggest otherwise. Most of the cases AMM cites merely illustrate the undisputed proposition that the First Amendment, including the Establishment Clause, has applications beyond prohibiting denominational discrim-ination. *See* Appellant's Br. 20-24; *see, e.g., id.* at 22 (citing church autonomy cases).

Others are outdated. *See, e.g.*, *id.* at 33 (citing *Agostini v. Felton*'s discussion of the "effects" prong of the abandoned *Lemon* test, 521 U.S. 203, 223 (1997)).[5]

And the only two cases AMM discusses in any depth do not support it either. The discussion from *Weaver* that AMM highlights (at 30-31) rejected the distinct argument that a statute could distinguish between "type of institutions" without distinguishing between "types of religions," even though the challenged statute "explicitly" distinguished between institutions based on how "sectarian" they were. 534 F.3d at 1259 (citations omitted). And *Grumet* illustrates, not undermines, the propriety of the district court's approach here; the Supreme Court's finding of an Establishment Clause violation there rested in significant part on evidence that the challenged law reflected "legislative favoritism along religious lines." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 703-04 (1994) (contrasting creation of special school district for Satmars with rejection of separate schooling for Catholics). So, AMM fails to show the district court erred by holding AMM's Establishment Clause claim failed absent evidence of denominational discrimination.

*Finally*, AMM pivots to unfair surprise, claiming that the district court's analysis turned on the conclusion that "ULCM and AMM are two branches of the same religious 'denomination'" and arguing that AMM lacked "an opportunity to

---

[5] The Supreme Court recognized in *Kennedy* that it had "long ago abandoned *Lemon*." 597 U.S. at 534.

specifically address" that distinction. Appellant's Br. 29-30, 34-39. But, as discussed, the district court's rejection of AMM's claim rested not on any notion that the Establishment Clause allows discrimination between churches of the same denomination, *cf. id.* at 29-30, but on AMM's failure to prove "denominational discrimination," Order on Mots. for Summ. J., R. 56, Page ID # 905. The district court's point was that AMM failed to identify any relevant religious difference between itself and ULC related to Generals Jones and Wamp's supposed "disparate treatment of AMM and ULCM." *Id.*

And AMM did not lack "an opportunity to meet [this] test," as it claims. Appellant's Br. 34. Defendants argued in their summary judgment brief, in their response to AMM's summary judgment motion, and in their reply brief that AMM's Establishment Clause claim failed because "AMM cannot establish that Defendants' unwillingness to enter a similar stipulation with AMM is based on religion." Defs.' Summ. J. Br., R. 48, Page ID # 292; Defs.' Resp. to Pls.' Summ. J. Mot., R. 51, Page ID # 824-25 (similar); Defs.' Summ. J. Reply, R. 53, Page ID # 865 (similar). AMM had every opportunity to rebut that argument but failed to do so because it cannot. So, remand is not necessary and would be futile. *Contra* Appellant's Br. 34-39.

## B. The district court correctly granted Defendants judgment as a matter of law on AMM's equal protection claim.

The district court correctly held that AMM's equal protection claim failed as a matter of law. *See* Order on Mots. for Summ. J., R. 56, Page ID # 918. The Equal

Protection Clause prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This language "was not designed to compel uniformity in the face of difference," *Whitney v. State Tax Comm'n*, 309 U.S. 530, 542 (1940); rather, it bars only "intentional and arbitrary discrimination," *Glicker v. Mich. Liquor Control Comm'n*, 160 F.2d 96, 99 (6th Cir. 1947) (quotations omitted).

AMM failed to show anything of the kind. The record evidence demonstrates that AMM and ULC were not similarly situated. Even if AMM could pass that threshold bar, it failed to establish any ground for heightened scrutiny. And AMM did not appeal the district court's correct holding that Defendants' conduct survived rational basis review, forfeiting the issue.

### 1. AMM did not establish disparate treatment as compared to ULC.

To establish an equal protection claim, a plaintiff must first establish that the state defendant has intentionally "treated the plaintiff disparately as compared to similarly situated persons." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quotations omitted). "In other words, unless the plaintiff shows that a law (as written or as enforced) treats people who are in the same position differently, a successful equal-protection claim cannot be made." *Dog Pound, LLC v. City of Monroe*, 558 F. App'x 589, 592 (6th Cir. 2014); *see Arsan v. Keller*, 784 F. App'x

50

900, 912 (6th Cir. 2019) (same). AMM failed to satisfy this "threshold" requirement. *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014).

AMM did not establish disparate treatment by comparison to ULC because AMM wanted Generals Jones and Wamp to agree to broader stipulations than they had entered with ULC. As discussed, the ULC stipulations merely stated Defendants' view that they could not prosecute anyone, including ULC ministers, under the online ordination statute or the false statements statute and, thus, would not challenge marriages solemnized by ULC ministers. *Nabors*, 2023 WL 5624706, at *1. But AMM's proposal asked for significantly broader stipulations that would have included promises about actors outside Defendants' authority and conduct outside their jurisdictions. *See supra* p. 13. And Generals Jones and Wamp both identified those reasons, among other distinctions, for declining to agree to AMM's proposal. *See supra* pp. 13-14.

AMM's significantly broader requests demonstrate that AMM was not "similarly situated in all material respects" to ULC. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (quotations omitted). So, its equal protection claim failed on that ground alone. *See Arsan*, 784 F. App'x at 912.

The district court held that AMM and ULC were similarly situated. Order on Mots. for Summ. J., R. 56, Page ID # 915. But it did not address Defendants' argument that AMM's and ULC's stipulations distinguished them. Rather, the district

court relied on the fact that both were religious organizations seeking to offer online-ordination services in Tennessee. *Id.* That ignores the "material" differences between ULC's and AMM's stipulations, *see Bench Billboard*, 675 F.3d at 987 (quotations omitted), which are "supported by the record," *Wausau*, 323 F.3d at 403-04. Thus, this Court may "affirm the district court's judgment on [the] ground" that AMM and ULC were not similarly situated as to Defendants' challenged conduct. *Id.*

### 2. The district court correctly applied rational basis review.

Even if AMM crossed the disparate treatment "threshold," *Marie*, 771 F.3d at 361, the district court was right to hold that strict scrutiny did not apply. Order on Mots. for Summ. J., R. 56, Page ID # 909-10. "[O]nce disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). The classification AMM advances here—religion— does not merit strict scrutiny in this case, and AMM forfeited any challenge to the district court's holding that Defendants' conduct survived rational basis review.

As a general rule, legislation is presumed valid and will be sustained "if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This rule gives way to heightened review only when laws "burden[] a fundamental right" or "involve a suspect or quasi-suspect class." *Ondo v. City of Cleveland*, 795 F.3d 597,

608 (6th Cir. 2015). To date, though, the Supreme Court has recognized only three suspect classifications (race, alienage, and national origin) and two quasi-suspect classes (sex and illegitimacy). *Id.* And this Court has treated equal protection claims based on religion as involving not a suspect class but potentially a fundamental right. *Bowman v. United States*, 564 F.3d 765, 775 (6th Cir. 2008).

Even assuming the short list of suspect classifications should be expanded to include religion-based classifications as AMM advocates (at 39), *cf. United States v. Skrmetti*, 605 U.S. 495, 549 (2025) (Barrett, J., concurring), there's no evidence AMM would fall within such a class here. Rather, as discussed and as conceded by AMM in its amended complaint, "the difference" in Defendants' treatment of "AMM and ULCM is not based on faith or circumstances, but only that ULCM already sued Tennessee." Am. Compl., R. 19 ¶ 63 Page ID # 95. In other words, the challenged state conduct "distinguishe[d] between" parties to the ULC suit and non-parties. *See Gore v. Lee*, 107 F.4th 548, 555 (6th Cir. 2024). It did not draw a distinction based on religion. *Cf. id.* (reaching a similar conclusion as to alleged sex-based classification that did not distinguish based on sex). And AMM cites no evidence that "religion" was "the reason for the differential treatment." *See Schlussel v. City of Dearborn Heights*, 753 F. App'x 359, 361 (6th Cir. 2018). AMM "has thus failed to [establish] a claim that [Defendants] discriminated against [it] based on [its] membership in a suspect class." *Id.*

The Third Circuit's non-binding decision in *Hassan v. City of New York* is not to the contrary. *See* Appellant's Br. 40-42 (citing 804 F.3d 277 (3d Cir. 2015)). That case did not hold, as AMM suggests, that a plaintiff may establish discrimination based on the fact that the plaintiff is associated with a religion. Before concluding that "religious affiliation" is a suspect class, *Hassan* held that the plaintiffs "must allege (and ultimately prove) 'intentional discrimination,'" meaning they must establish that their "religious affiliation [was] a substantial factor" in the claimed "different treatment." 804 F.3d at 297, 294 (citation omitted). And it held further that a plaintiff must establish "that the state actor *meant* to single out a plaintiff because of the *protected characteristic*." *Id.* at 297. In other words, under *Hassan*, a plaintiff cannot establish an equal protection violation based on conduct that was not driven by the plaintiff's religion. That's consistent with the district court's reasoning here. Order on Mots. for Summ. J., R.56, Page ID # 909.

AMM asserts (at 42) that "Defendants' disparate treatment of AMM and ULCM was based on religion." But it cites no record evidence in support. That is because there is none. So, the district court correctly held that AMM failed to establish a religious classification supporting heightened review.

### 3. AMM forfeited any challenge to the district court's rational basis holding.

AMM's opening brief put all its equal protection eggs in one basket—arguing that Defendants' "conduct should be subject to strict scrutiny." Appellant's Br. 43.

AMM thus forfeited any challenge to the district court's holding that Defendants' stipulation-related conduct survived rational basis review. Order on Mots. for Summ. J., R. 56, Page ID # 917; *Glennborough*, 21 F.4th at 414.

And, besides, as the district court explained, Defendants had a rational basis for entering the ULC stipulations: "they had a lawsuit to resolve, and the stipulations did just that." Order on Mots. for Summ. J., R. 56, Page ID # 916. And given that Defendants "made promises" in those stipulations "about a subject matter and a statute outside of their authority," they also had a rational basis for declining to make similar promises again. *Id.* at Page ID # 917.

## CONCLUSION

The Court should affirm the judgment of the district court.

Dated: April 16, 2026

Respectfully submitted,

/s/*Virginia N. Adamson*
 Virginia N. Adamson
  *Assistant Solicitor General*
  *Counsel of Record*

Jonathan Skrmetti
 *Attorney General & Reporter*
 *of the State of Tennessee*

J. Matthew Rice
 *Solicitor General*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee
(615) 741-3491
jenna.adamson@ag.tn.gov

*Counsel for Defendants*

56

# CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 32(a)(7)(b) because it contains 12,853 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.

/s/*Virginia N. Adamson*
VIRGINIA N. ADAMSON
*Assistant Solicitor General*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on April 16, 2026. That system served all parties or their counsel of record if they are registered users.

/s/*Virginia N. Adamson*
Virginia N. Adamson
*Assistant Solicitor General*

# DESIGNATION OF RELEVANT DOCUMENTS

The following record documents are relevant to this appeal:

| Document | R. | Pages |
|---|---|---|
| Amended Complaint | 19 | 96-106 |
| Order on Defendants' Motion to Dismiss | 31 | 182-199 |
| Entry of Default | 32 | 201 |
| Defendants' Motion for Summary Judgment Brief | 48 | 282-292 |
| Joint Appendix | 49-1 | 317-718 |
| AMM's Motion for Summary Judgment Brief | 50 | 792-796 |
| Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment | 51 | 825 |
| AMM's Response to Defendants' Motion for Summary Judgment | 52 | 835-846 |
| Supplemental Joint Appendix | 52-1 | 856-57 |
| Defendants' Summary Judgment Reply | 53 | 865 |
| Order on Motions for Summary Judgment | 56 | 892-918 |
| Notice of Appeal | 58 | 920 |